UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rebecca Clark, | Civil No.17-1718 (FLN) |
| Plaintiff, | |
| v. | **ORDER** |
| Nancy Berryhill,<br>Commissioner of Social Security, | |
| Defendant. | |

_____

Karl Osterhout and Edward Olson, for Plaintiff.
Pamela Marentette, Assistant United States Attorney, for Defendant.
_____

Plaintiff Rebecca Ann Clark seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied her application for disability insurance benefits under Title II of the Social Security Act. This court has jurisdiction over the claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have filed cross motions for summary judgment. *See* ECF Nos. 14 and 16. For the reasons set forth below, the Commissioner's motion for summary judgment is **GRANTED**, the Commissioner's decision is **AFFIRMED**, and the case is **DISMISSED WITH PREJUDICE**.

## I. INTRODUCTION

This extended SSA litigation involves Clark's application for SSA benefits that was denied on multiple occasions and levels by the SSA, but was twice remanded by the SSA Appeals Council. At the core of this dispute, is the disabling effect recurring migraine headache have on Clark's ability to secure and maintain competitive employment and the paucity of medical records

supporting Clark's allegations regarding the limiting effects, severity, and frequency of her migraine headaches.

On August 8, 2011, Clark applied for disability insurance benefits ("DIB") under Title II of the Social Security Act, alleging an initial disability onset date of December 24, 2007. Administrative Record [hereinafter "AR"] 193, 418 ECF No. 13. The SSA denied Clark's application initially and upon reconsideration. AR 266, 276. On March 15, 2013, an initial administrative hearing was held before Administrative Law Judge ("ALJ"), Michael Quayle. AR 99–131. On April 11, 2013, the ALJ issued a decision denying Clark's DIB application. AR 224. Specifically, the ALJ found that Clark, based on her age, education, work experience, and residual functional capacity could transition to other work in the national economy. AR 215. On July 23, 2014, the SSA Appeals Council remanded the matter back to the ALJ, directing the ALJ to "[g]ive further consideration to Clark's maximum residual functional capacity and provide rational with specific reference to evidence of record in support of the assessed limitations" and "evaluate the nontreating source opinion . . . and nonexamning source opinions . . . ." AR 225. The ALJ was also directed to "if warranted by the expanded record, obtain supplemental evidence from a vocation expert to clarify the effect of the assessed limitations on the claimant's occupational base." *Id.*

On November 13, 2014, a second administrative hearing was held before ALJ Quayle. AR 231. On December 4, 2014, the ALJ again denied Clark's DIB application. AR 252. Specifically, the ALJ again found that Clark, based on her age, education, work experience, and residual functional capacity could transition to other work in the national economy. AR 253. On April 23, 2015, the SSA Appeals Council again remanded the matter back to the ALJ, directing the ALJ to: (1) "[g]ive further consideration to the claimant's maximum residual functional capacity during

the entire period at issue and provide rational with specific reference to evidence of record in support of the assessed limitations[;]" (2) "evaluate the treating and nontreating source opinions[;]" and (3) "explain the weight given to such opinions." AR 264.

On November 25, 2015, a third administrative hearing was held, this time before ALJ Micah Pharris. AR 132–92. On December 9, 2015, the ALJ denied Clark's DIB application. AR 7–9. For a third time, the ALJ concluded that Clark, based on her age, education, work experience, and residual functional capacity could transition to other work in the national economy. AR 46. On March 24, 2017, the SSA Appeals Council denied review, finalizing the ALJ's decision for purposes of judicial review. AR 1–6; *see* 20 C.F.R. § 404.981. On May 23, 2017, Clark commenced this action, seeking an award of benefits, or alternatively, remand for further proceedings pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* ECF No. 1.

## II. FACTUAL BACKGROUND

### A. Background

Clark was thirty-one years old at her amended alleged disability onset date, which is defined as a younger claimant under SSA regulations. AR 142–43; *see also* 418; **§** 404.1563(c). Clark claims that the following medical conditions impair her ability to secure and maintain competitive employment: chronic migraine headaches, severe right shoulder/neck pain, arthritis, carpal tunnel, and depression. AR 478. Clark has a high school education and her past relevant work includes employment as a cashier, insulator, expediter, and personal care attendant. AR 639. This past relevant work is classified as unskilled and semiskilled. *Id.*

### B. Hearing Testimony

Clark testified at the November 25, 2015, administrative hearing on her own behalf. AR 132–92. Clark was represented by her attorney, Greg Nelson. *Id.* Nelson made no objection to the

admission of the exhibits into evidence, nor did he move for the admission of evidence. AR 135–36.

Clark testified that she provided care for her disabled cousin for brief and sporadic periods between 2009 and 2013. AR 149. Clark testified that she worked at McDonald's as a cashier in 2009 and 2010, but left the job because she suffered severe migraines. AR 150. She testified that fluorescent lights trigger her migraines. AR 155. Clark testified that the she had suffered from migraines for many years, but they started to become more intense and frequent in 2011, when she started getting them two to three times per week. AR 157–58. She stated that the migraines usually lasted eight to ten hours, during which Clark would lay in bed for relief, often without eating, and in total darkness. AR 159.

Clark testified that she has three young children, all of which live with her and her husband. AR 148. Clark stated that her migraines disrupted her family life because the condition required her children to talk very little and to keep household noise to a minimum. *Id.* Clark testified that her medication, primarily Percocet and Cyclobenzaprine, occasionally eased her pain symptoms, but often failed to provide any relief and caused significant side effects. AR 159–60. For example, Clark testified that the medications have caused her to gain approximately seventy pounds because they make her drowsy, lethargic, and inactive. AR 168. Clark testified that she receives regular treatment for her migraines, from her neurologist, Joseph Morley, M.D. AR 161. Clark testified that Morley changes her medication to explore different pain treatments. AR 162.

A neutral medical expert, Joseph Horozaniecki, M.D., also testified at the hearing. AR 169. Horozaniecki testified that he reviewed Clark's medical record and observed that her headache disorder was variously diagnosed as migraine, trauma, and cervicogenic. AR 170. Horozaniecki testified that the frequency of Clark's headache impairment is mentioned only in Morley's SSA

medical source statements, but not in any of Clark's provider treatment notes. AR 172. He opined that, typically, in a case allegedly dealing with debilitating migraine headaches, he would expect to observe the frequency of the headaches recorded in the treatment notes; for example, medication and treatments addressing frequency as well as pain. *Id.* Horozaniecki testified that absent Morley's SSA medical source statements, a listing level impairment is not demonstrated by the medical evidence of record. AR 173.

Horozaniecki further testified that fluorescent lights could be a trigger Clark's migraines, but that a specific source was not noted outside Morley's SSA medical source statements. AR 177. Horozaniecki testified that the frequency of the migraines would likely need to be a point of inquiry in order to properly administer medications and treatments. AR 178. Horozaniecki testified that, in his experience, it is unlikely that a patient would not report the frequency of their severe migraines because "[m]edications could be changed or altered or added upon if the frequency of the ailments . . . were brought out." AR 180–81.

### C. Disputed Medical Evidence[1]

Morley is Clark's long-time treating neurologist. *See, e.g.*, AR 1166. Morley, during the relevant period, treated Clark on nearly forty occasions. *See, e.g.*, AR 971, 973, 975, 978, 981, 983, 985, 988, 992, 993, 996, 998, 1,000, 1,003, 1,005, 1,011, 1,013, 1,032, 1,036, 1,083, 1,086, 1,106, 1,108, 1,110, 1,164, 1,169, 1,273, 1,275, 1,277, 1,279, 1,281, 1,283, 1,287, 1,289, 1,299, 1,466, 1,471, 1,473, 1,475, 1,484. Through the pendency of this case, Morley has completed numerous SSA medical source statements concerning Clark's migraines and fibromyalgia considered by both ALJs. *See, e.g.*, AR 1166, 1303–08, 1529–32, 1533–38. For example, on

---

1     To the extent Clark challenges the medical evidence, her challenge is directed at Morley's medical findings outlined in his SSA medical source statements.

5

February 20, 2009, Morley completed an SSA medical source statement and noted that Clark would miss more than four days per month, but her symptoms would not be expected to last more than twelve months and her condition was fair. AR 1166–67. On November 7, 2014, Morley completed an SSA medical source statement, noting that Clark met the American College of Rheumatology's criteria for fibromyalgia, that her pain was "constant, daily," that she had been "unable to work for the past 6 years," that she could walk less than one city block, that she could sit for a maximum of 45 minutes and stand for a maximum of 15 minutes, and that she would need to take unscheduled breaks to lie down twice daily for 30 minutes during a working day. AR 1303–06. He also noted that she would be "off task " fifteen percent or more of the time, could never climb ladders, rarely stoop, crouch/squat, and only occasionally twist, climb stairs, look down, turn her head from left to right, look up, and hold her head in a static position. AR 1307. He concluded that she would be absent from work four or more days per month. *Id.*

On September 23, 2015, Morley completed another SSA medical source statement regarding Clark's migraine headaches. AR 1529–32. He identified the following symptoms associated with Clark's headaches: nausea/vomiting, photophobia, inability to concentrate, impaired sleep, exhaustion, visual disturbances, mood changes, and mental confusion, all of which worsen with activity. AR 1529. He noted that the migraines occur about three times per week and were triggered by bright light, noise, stress, and strong odors. AR 1530. Morley stated that use of analgesic medication, and lying down in a quiet, dark place with a cold pack improved Clark's headaches. *Id.* He concluded that Clark is incapable of even low stress work, and would need a break to lie down every two hours. *Id.* Furthermore, she would be "off task" while at work twenty-five percent or more of the time and would miss more than four days a month as a result of her impairments. AR 1532.

Morley completed the final SSA medical source statement on October 30, 2015. AR 1533–38. Morley again noted that Clark's pain was "constant [and] daily" and that she had been "unable to work for the past 7 years." AR 1534. He again noted that Clark would be "off task" fifteen percent of the time. AR 1537. He concluded that she would be "capable of low stress work," but would be absent four or more days per month. *Id.*

### D. Commissioner's Decision

On December 9, 2015, the ALJ issued a decision denying Clark's application for DIB benefits. AR 7–56. In determining that Clark was not disabled, the ALJ followed the five-step sequential process established by the SSA, outlined in 20 C.F.R. 404.1520(a) and 416.920(a).

The first step is to consider whether the claimant's work during the alleged disability period qualifies as substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has performed substantial gainful activity, she is not disabled. *Id.* At step one, the ALJ found that, although Clark had worked after her alleged disability onset date, she had not engaged in substantial gainful activity because there were no earnings of record after the alleged onset date consistent with establishing substantial gainful activity. AR 13.

The second step is to determine whether the claimant has an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416. 920(a)(4)(ii). At step two, the ALJ found that Clark had the following severe impairments: migraine headaches, variously diagnosed as post concussive disorder and cervicogenic headaches, chronic right shoulder pain status post multiple surgeries, right carpal tunnel syndrome, and fibromyalgia. AR 13. He found all other impairments nonsevere. AR 14–19.

The third step is to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 416.920(d), 416.925, 416.926. At step three, the ALJ determined that Clark did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1. AR 19–21. The ALJ specifically considered, but ruled out, listing criteria 11.03 (epilepsy), 1.02 (joint dysfunction and fibromyalgia), 14.06 (headaches and fibromyalgia), and 11.04 (peripheral neuropathies). *Id.*

If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Functional Capacity ("RFC"). Here, the ALJ concluded that Clark had an RFC:

> to perform sedentary work as defined in 20 C.F.R 404.1527(a) except: The claimant may never climb ropes, ladders, or scaffolds; may occasionally climb ramps and stairs, stoop, crouch, and crawl; and may frequently balance. The claimant may not reach overhead with the right upper extremity and may not fully reach forward with the right upper extremity. The claimant may frequently reach in all other directions, including up to 18 inches forward with the right upper extremity. The claimant may frequently handle and finger with the right hand but may do no power gripping with that hand.

AR 21. In making this determination, the ALJ found that "[Clark's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Clark's] statements concerning the intensity, persistence, limiting effects, and frequency, of these symptoms are not entirely credible . . . ." AR 23.

The fourth and fifth steps are to determine whether the claimant has the RFC to perform either her past relevant work or any other job that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g). If the claimant can still perform past relevant work, then she is not disabled. *Id.* If the claimant cannot perform her past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to

8

perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At the fourth step, the ALJ determined that Clark was unable to perform any of her past relevant work as a "cashier (light, unskilled work), insulator (heavy, semiskilled work), expediter (light, semiskilled work), and personal care attendant (medium, semiskilled work)." AR 45. However, at step five, the ALJ concluded that Clark was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. AR 46. Specifically, the ALJ concluded that Clark could perform sedentary work as an "order clerk (3,790 jobs in Minnesota and 208,000 jobs nationally)" and "document preparer (5,500 jobs in Minnesota and approximately 2.8 million in the national economy) . . . ." AR 46. Therefore, the ALJ concluded that Clark was not suffering from a disability as defined under the Social Security Act. *Id.* In making this determination, the ALJ considered the VE's testimony, and Clark's RFC, age, education, and work experience and found this evidence consistent with the DOT. *Id.*

### III. STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the SSA means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled under the SSA "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* Therefore, this Court's review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675

(8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV. ANALYSIS

Clark first argues that the ALJ's RFC assessment is flawed because the ALJ failed to properly evaluate the work-related limitations of her treating neurologist Morley. ECF No. 15 at 18. Specifically, she argues that Morley's opinions are entitled to controlling weight as her treating physician because his opinion is well supported by the medical evidence of record and is not inconsistent with other substantial evidence; or alternatively, that the ALJ should have at least assigned Morley's opinion more than little weight. *Id.* Second, Clark argues that the ALJ's RFC assessment is flawed because she improperly discounted Clark's subjective allegations without identifying inconsistencies in the record as a whole. *Id.* at 35–37. The Commissioner argues that "the record evidence shows the ALJ complied with the relevant law and substantial evidence supports the ALJ's decision . . . ." ECF No. 17 at 1. Because substantial evidence in the record as a whole supports the ALJ's decision denying Clark's application for DIB benefits, this Court affirms.

### A. The ALJ Properly Evaluated Morley's Opinion in Fashioning Clark's RFC

Generally, treating physicians' opinions are entitled to controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are consistent with the other substantial evidence in the record as a whole. *See* 20 C.F.R. § 404.1527(c)(2); *Kelly v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). The rationale is that the treating physician is more familiar with the claimant's medical condition than an examining or consulting doctor. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). When an ALJ gives less than controlling weight to a treating physician's opinion, he must always give good reason for the particular weight given to

a treating physician's evaluation. *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(2). When an ALJ discounts a treating physician's opinion, there must be "substantial evidence" in the record supporting the weight assigned. *See Pope v. Bowen*, 886 F.2d 1038, 1041 (8th Cir. 1989). Additionally, a treating physician's opinion is entitled to controlling weight when it is nothing more than a conclusory statement. *See Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir.1996)). If the ALJ determines that the claimant's treating physician's opinion is not controlling, he must evaluate the following factors to determine what weight to give the opinion: (1) length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the quantity of evidence in support of the opinion; (4) consistency of the opinion with the record as a whole; (5) whether the doctor is a specialist; (6) other factors brought to the ALJ's attention. *See* 20 C.F.R. § 404.1527(c)(2)–(6).

Clark argues that Morley's opinion regarding her migraine headaches, specifically that she was in constant and daily pain, would be off task fifteen percent of the time, was capable of only low stress work, and would be absent four or more days per month, is entitled to controlling weight. ECF No. 15 at 18. The ALJ assigned Morley's migraine findings little weight because the objective medical evidence either did not support or contradicted his findings. AR 38. For example, Clark cites a follow-up note from September 9, 2009, in which Morley writes that "[Clark's] headaches continue at a regular pace. She has had more severe headaches recently." AR 990. Morley also referred to Clark's migraines as "at times[,] very intense, requiring Relpax to control them" and notes a resurgence in headaches after cutting back Topamax treatment because of cognitive problems. AR 978, 981.

However, the ALJ provided good reason for discounting this evidence because, independent of Clark's representations, the ALJ found that no objective medical evidence in terms

of image testing or diagnostic techniques or procedures corroborating Morley's findings regarding the severity of Clark's symptoms. AR 38. Indeed, the ALJ noted that despite Clark's representations, Morley did not advise Clark to change her treatment modality, pursue more aggressive treatment, or go beyond conservative pain management. *Id.* In addition, the ALJ noted that Morley did not recommend special accommodations for Clark such as a driving restriction or other physical restriction or limitation. *Id.* Moreover, the ALJ noted that Morley did not report the frequency of Clark's migraines in his treatment notes, nor were the frequency of Clark's migranes recorded or observed in the medical evidence of record. AR 39. As such, the ALJ noted that it appeared Morley relied entirely on Clark's subjective complaints in completing his SSA medical source opinions. *Id.*

Finally, the ALJ noted that Morley's SSA medical source statements were inconsistent with his own treatment notes. For example, Morley noted on September 12, 2012, that Clark's migraines persisted until she took her pain medication, AR 1103, and that Clark was having some success managing her pain with medication. AR 1283, 1332. In addition, in his February 20, 2009, SSA medical source statement, Morley noted that Clark's symptoms would not be expected to last more than twelve months and her condition was fair. AR 1166–67. This evidence does little to support the severe limitations or findings of disability stated in Morley's SSA medical source statements or render those limitations "well-supported." 20 C.F.R. § 404.1527(c)(2). Fundamentally, Morley's treatment notes contain only general suggestions about the scope and extent of Clark's migraines and no objective medical evidence of record directly supports Morley's opinion regarding the severity and frequency of Clark's migraines and the limiting effects of that disorder.

An "ALJ [is] not required to believe the opinion of [a provider] when, on balance, the medical evidence convinced him otherwise." *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997). Therefore, this Court concludes that the ALJ did not err in finding that Morley's opinion was inconsistent with other substantial evidence in the record as a whole, and provided good reason for discounting Morley's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *see, e.g.*, *Kelly*, 133 F.3d at 589 (reasoning that a treating physician's opinion is entitled to controlling weight if it is *well supported* by medically acceptable techniques).

In the alternative, Clark argues that if not given controlling weight, Morley's opinions expressed in his SSA medical source statements should be given great weight. ECF No. 15 at 18. However, "[i]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). Here, the ALJ adequately explained his decision. The ALJ's analysis identified and incorporated the requisite supportability and consistency factors, *see* 20 C.F.R. § 404.1527(c)(2)–(6), and his decision provided sufficient explanation for the weight given to Morley's opinion and for the ALJ's concomitant conclusion that Morley's opinion was "inconsistent with the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). As such, this Court finds no error in the weight the ALJ assigned Morley' opinion.

## B. The ALJ Properly Evaluated Clark's Subjective Complaints of Pain

Clark argues that the ALJ erred in fashioning her RFC because he discounted her subjective complaints of pain. ECF No. 18 at 35. In evaluating a claimant's RFC, an ALJ must also evaluate her credibility. *See Wagner*, 499 F.3d at 851. Specifically, an ALJ must fully consider the claimants' subjective complaints, including: (1) daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.1320, 1321–22 (8th Cir. 1984). The ALJ may not discount a claimant's credibility solely because the objective evidence does not fully support her subjective complaints, but may discount credibility based on inconsistencies in the record as a whole. *See Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). An ALJ is not required to explicitly discuss each *Polaski* factor. *See Strongson v. Barnhart*, 361 F.3d 1066 (8th Cir. 2004) (citation omitted).

Here, the ALJ provided several acceptable reasons for discounting Clark's subjective complaints of pain. First, he noted that Clark's "ongoing activities during the relevant time period were consistent with the ability to perform work within the residual functional capacity." AR 44. Clark reported managing her own personal care items without difficulty, shopping, managing finances, and having no difficulty getting along with others. AR 492–95, 536–40. She also drove to her child's school to have lunch with them, attend their soccer games, and walked to visit her neighbor. AR 495.

Furthermore, the ALJ noted an inconsistency between Clark's testimony at the hearing and the evidence in her medical records. At the hearing, Clark testified that she left her job at McDonald's because she was physically unable to work there due to shoulder pain and migraines.

15

AR 150. However, in an SSA functional capacity evaluation completed on July 12, 2011, it was noted that Clark quit the job partly because she moved. AR 1136.

While the ALJ did not expressly mention each *Polaski* factors in his credibility analysis, such specificity is not required. *See, e.g.*, *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (holding that "the ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered"). Here, the ALJ gave ample explanation for his RFC determination, and there is substantial evidence in the record to support his conclusion. Clark's improvement in response to treatment, pain management medication, and inconsistencies between her subjective complaints and objective medical evidence support the ALJ's credibility determination and demonstrate the ALJ's application of the *Polaski* framework. Because substantial evidence in the record as a whole supports the ALJ's adequately explained credibility determination, this Court will not disturb the ALJ's decision to discount Clark's subjective allegations of pain and symptom severity. "Where adequately explained and supported, credibility findings are for the ALJ to make." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

Indeed, the Court finds no error in the ALJ's fashioning of Clark's RFC. "[A] claimant's [RFC] is a medical question" that requires "[s]ome medical evidence" in support. *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ articulated the weight assigned to the opinion evidence, specifically, giving great weight to Horozaniecki in fashioning Clark's RFC, and incorporated the credible evidence of record in Clark's RFC. *Id.*

The record shows that the ALJ's RFC determination included, at minimum, some medical evidence. Although the ALJ must not "succumb to the temptation to play doctor and make their own medical findings," *Pate-Fires v. Asutre*, 564 F.3d 935, 947 (8th Cir. 2009), in this case, Clark does not argue that the ALJ went beyond the presented evidence to make independent factual

findings. This Court's review of the ALJ's factual determination is deferential, and it neither reweighs the evidence, reviews the factual record *de novo*, *see Flynn*, 107 F.3d at 620, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Because the ALJ's RFC determination relied on a sufficient examination of the record, the Court concludes that substantial evidence exists to support the ALJ's RFC determination. *See id.*

## V. CONCLUSION

If the ALJ's decision is supported by substantial evidence on the record, this Court cannot reverse simply because "substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468. Here, substantial evidence supports the ALJ's decision to deny Clark's application for DIB. Accordingly, this Court must affirm the ALJ's decision and the Commissioner's motion for summary judgment must be granted.

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Clark's motion for summary judgment (ECF No. 14) is **DENIED**;

2. The Commissioner's motion for summary judgment (ECF No. 16) is **GRANTED**;

3. The Commissioner's decision is **AFFIRMED** and the case **DISMISSED WITH PREJUDICE**. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 24, 2018    *s/Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge